# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

**STATE OF SOUTH CAROLINA**
**COUNTY OF KERSHAW**

**IN THE COURT OF COMMON PLEAS**
C.A. No.: 2024-CP-28-28000959

THE CINCINNATI INSURANCE COMPANY
as subrogee of Protective Packaging, Inc. and
TEP Real Estate, LLC
6200 South Gilmore Road
Fairfield, Ohio 45014

Plaintiff,

v.

SPX FLOW, INC.
3320 Ballantyne Corporate Place
Charlotte, North Carolina 28277-3607

SPX FLOW US, LLC
3320 Ballantyne Corporate Place
Charlotte, North Carolina 28277-3607

W.W. GRAINGER, INC.
100 Grainger Parkway
Lake Forest, Illinois 60045

SAMSUNG ELECTRONICS AMERICA, INC.
85 Challenger Road
Ridgefield Park, New Jersey 07660

and

SAMSUNG ELECTRONICS CO., Ltd.
129 Samseong-ro,Yeongtong-gu, Suwon-Si,
Gyeonggi-do (Maetan-dong)
Republic of Korea (South)

Defendants.

**SUMMONS**
(Jury Trial Demanded)

TO THE DEFENDANTS NAMED ABOVE:

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in the above-captioned action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint on the Plaintiff at Hammack Law Firm, P.A., 223 West Stone Avenue, Greenville, SC 29609 thirty (30) days after the service hereof, exclusive of the date of service; in the event you fail to answer said Complaint within this time, the Plaintiff will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you for the relief demanded in the Complaint.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

HAMMACK LAW FIRM, P.A.

s/Paul E. Hammack
Paul E. Hammack, Esquire
SC Bar Number 68501
paul@hammacklawfirm.com
HAMMACK LAW FIRM, LLC
223 West Stone Avenue
Greenville, SC 29609-5434
864-326-3333
Fax: 864-991-3911

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

s/Michael F. Wallace
Michael F. Wallace, Esquire
wallacem@stutmanlaw.com
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
20 East Taunton Road, Suite 403
Berlin, NJ 08009
856-767-6800
Fax: 856-767-6810
*To Be Admitted Pro Hac Vice*

**Attorneys for Plaintiff**

January 14, 2025
Greenville, South Carolina

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

| | |
|---|---|
| **STATE OF SOUTH CAROLINA**<br>**COUNTY OF KERSHAW** | **IN THE COURT OF COMMON PLEAS**<br>C.A. No.: 2024-CP-28-28000959 |
| THE CINCINNATI INSURANCE COMPANY<br>as subrogee of Protective Packaging, Inc. and<br>TEP Real Estate, LLC<br>6200 South Gilmore Road<br>Fairfield, Ohio 45014<br>Plaintiff,<br>v. | **CIVIL ACTION AMENDED COMPLAINT**<br>(Jury Trial Demanded) |
| SPX FLOW, INC.<br>3320 Ballantyne Corporate Place<br>Charlotte, North Carolina 28277-3607<br><br>SPX FLOW US, LLC<br>3320 Ballantyne Corporate Place<br>Charlotte, North Carolina 28277-3607<br><br>W.W. GRAINGER, INC.<br>100 Grainger Parkway<br>Lake Forest, Illinois 60045<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br>85 Challenger Road<br>Ridgefield Park, New Jersey 07660<br><br>and<br><br>SAMSUNG ELECTRONICS CO., Ltd.<br>129 Samseong-ro,Yeongtong-gu, Suwon-Si,<br>Gyeonggi-do (Maetan-dong)<br>Republic of Korea (South)<br>Defendants. | |

Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, by and through its undersigned attorneys, hereby avers the following by way of Complaint against Defendants, SPX Flow, Inc.; SPX Flow US, LLC; W.W. Grainger, Inc.; Samsung Electronics America, Inc.; and Samsung Electronics Co., Ltd.:

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

## THE PARTIES

1. Plaintiff, The Cincinnati Insurance Company (hereinafter "Cincinnati"), is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 2600 South Gillmore Road, Fairfield, Ohio 45014.

2. At all times material hereto, Plaintiff, Cincinnati, was authorized to issue policies of insurance in the State of South Carolina, and provided insurance coverage to Protective Packaging, Inc. and TEP Real Estate, LLC under policy number: ENP0627120 (hereinafter the "Policy").

3. Plaintiff's Insured, Protective Packaging, Inc. (hereinafter "Protective Packaging"), is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located at 23 Industrial Park, Lugoff, Kershaw County, South Carolina 29078.

4. Plaintiff's Insured, TEP Real Estate, LLC (hereinafter "TEP"), is a limited liability company organized and existing under the laws of the State of South Carolina with a principal place of business located at 255 Standard Warehouse Road, Lugoff, Kershaw County, South Carolina 29078.

5. Defendant, SPX Flow, Inc., is, upon information and belief, a corporation organized and existing under the laws of the Commonwealth of Delaware with its principal place of business located at 13320 Ballantyne Corporate Place, Charlotte, North Carolina 82877-3607.

6. Defendant, SPX Flow, Inc., may be served through its Registered Agent in the State of South Carolina, the Corporate Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29069.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

7. At all material times, SPX Flow, Inc. was in the business of designing, manufacturing and distributing a dryer fan under the brand name Speedaire (hereinafter "Fan" and/or "Speedaire Fan").

8. Defendant, SPX Flow US, LLC, is, upon information and belief, a corporation organized and existing under the laws of the Commonwealth of Delaware, with its principal place of business located at 13320 Ballantyne Corporate Place, Charlotte, North Carolina 82877-3607.

9. Defendant, SPX Flow US, LLC, may be served through its Registered Agent in the State of South Carolina, the Corporate Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29069.

10. At all material times, SPX Flow US, LLC, was in the business of designing, manufacturing and distributing a dryer fan under the brand name Speedaire (hereinafter "Fan" and/or "Speedaire Fan").

11. Defendants, SPX Flow, Inc. and SPX Flow US, LLC, are collectively referred to herein as "SPX."

12. Defendant, W.W. Grainger, Inc. (hereinafter "Grainger"), is, upon information and belief, a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 100 Grainger Parkway, Lake Forest, Illinois 60045.

13. Defendant, Grainger, may be served through its Registered Agent in the State of South Carolina, the Corporate Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29069.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

14. At all material times, Grainger was in the business of designing, manufacturing and distributing a dryer fan under the brand name Speedaire (hereinafter "Fan" and/or "Speedaire Fan").

15. Defendant, Samsung Electronics Co., Ltd, Inc. (hereinafter "SEC"), is, upon information and belief, a corporation organized and existing under the laws of the Republic of Korea with its principal place of business located at 129 Samseong-ro, Yeongtong-gu, Suwon-Si, Gyeonggi-do, (Maetan-dong), Republic of Korea (South).

16. Defendant, SEC may be served through its principal place of business located at 129 Samseong-ro, Yeongtong-gu, Suwon-Si, Gyeonggi-do, (Maetan-dong), Republic of Korea (South).

17. Defendant, SEC was in the business of designing, manufacturing and distributing electronics including, but not limited, a compressor (hereinafter "Compressor") which was a component of the Speedaire Fan.

18. Defendant, Samsung Electronics America, Inc. (hereinafter "SEA"), is, upon information and belief, a corporation organized and existing under the laws of the State of New York with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

19. Upon information and belief, SEC operates a wholly owned subsidiary, SEA.

20. Upon information and belief, SEC exercises direction and control over the performance of SEA. Alternatively, Defendants, SEC and SEA form a joint business enterprise such that the performance by one Defendant is each attributable to the other Defendant.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

21. Defendant, SEA, may be served through its Registered Agent in the State of South Carolina, the CT Corporation System, located at 52 Office Park Court, Suite 103, Columbia South Carolina 29223.

22. At all times material hereto, Defendant, SEA was in the business of designing, manufacturing and distributing electronics including, but not limited, a compressor (hereinafter "Compressor") which was a component of the Speedaire Fan.

## JURISDICTION AND VENUE

23. Jurisdiction is proper in the Circuit Courts of the State of South Carolina in that the cause of action accrued in South Carolina, where the loss giving rise to the litigation occurred at 255 Standard Warehouse Road, Lugoff, Kershaw County, South Carolina 29078.

24. Jurisdiction in this Court is proper as the cause of action arose from each of the Defendants, SPX Flow, Inc.; SPX Flow US, LLC; Grainger; SEC and SEA's production, manufacture, and/or distribution of goods with the reasonable expectation that those goods were to be used and/or consumed within the State of South Carolina, the goods were so used and/or consumed within the State of South Carolina, and the use and/or consumption of those goods caused injury within the State of South Carolina.

25. Venue is proper in Kershaw County in that this is the county where the cause of action accrued and where the loss giving rise to the litigation occurred at 255 Standard Warehouse Road, Lugoff, Kershaw County, South Carolina 29078.

## BACKGROUND

26. At all times material hereto, Plaintiff's Insureds, Protective Packaging and TEP Real Estate, LLC ("Plaintiff's Insureds"), owned commercial property located at 255 Standard Warehouse Road, Lugoff, South Carolina 29078 (hereinafter the "Property").

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

27. At all times material hereto, Plaintiff was duly authorized to issue policies of insurance in the State of South Carolina.

28. At all times material hereto, Plaintiff provided insurance coverage to its Insureds for the Property and contents therein pursuant to the Policy.

29. At all times material hereto, Defendants SPX were engaged in the business of, inter alia, designing, engineering, developing, manufacturing, assembling, testing, inspecting, packaging, labeling, promoting, marketing, distributing, supplying, selling, and/or placing into the stream of commerce Speedaire Fans and/or component parts for Speedaire Fans which were intended for use by consumers for the ordinary purposes associated with such items.

30. At all times material hereto, Defendants SPX knew and intended that their Speedaire Fans and/or component parts for Speedaire Fans would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

31. At all times material hereto, Defendant Grainger was engaged in the business of, inter alia, designing, engineering, developing, manufacturing, assembling, testing, inspecting, packaging, labeling, promoting, marketing, distributing, supplying, selling, and/or placing into the stream of commerce Speedaire Fans and/or component parts for Speedaire Fans which were intended for use by consumers for the ordinary purposes associated with such items.

32. At all times material hereto, Defendant Grainger knew and intended that its Speedaire Fans and/or component parts for Speedaire Fans would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

33. At all times material hereto, Defendants SEA and SEC were engaged in

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

the business of, inter alia, designing, engineering, developing, manufacturing, assembling, testing, inspecting, packaging, labeling, promoting, marketing, distributing, supplying, selling, and/or placing into the stream of commerce compressors and/or component parts for compressors which were intended for use by consumers for the ordinary purposes associated with such items.

34. At all times material hereto, Defendants SEA and SEC knew and intended that its compressors and/or component parts for compressors would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

35. Prior to January 16, 2022, a Speedaire Fan and Compressor including, but not limited to, its component parts were designed, engineered, developed, manufactured, assembled, tested, inspected, packaged, labeled, promoted, marketed, distributed, supplied, sold, and/or placed into the stream of commerce by Defendants, SPX, Grainger, SEC and SEA.

36. At the time the Speedaire Fan and Compressor were placed into the stream of commerce by Defendants, SPX, Grainger, SEC and SEA, it was unreasonably and/or inherently dangerous, defective, and/or hazardous.

37. Prior to January 16, 2022, the Speedaire Fan, including the Compressor, was purchased and placed in the Property.

38. On or about January 16, 2022, a fire occurred at the Property (hereinafter "The Fire") due to the negligent and/or other liability producing conduct of Defendants, SPX, Grainger, SEC and SEA individually, jointly, and/or severally.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

39. Specifically, the Fire was caused to occur because the Speedaire Fan and Compressor were defective and failed to function as they were intended, which in turn caused the Fire.

40. At the time of the Fire, The Speedaire Fan, and its component parts, including the Compressor, were in the same condition as the date they were placed into the stream of commerce, and were not otherwise altered, modified, and/or changed in any way prior to or during its use.

41. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses of $2,966,763.20.

42. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

43. As a result of Plaintiff's payments made to or on behalf of its Insureds, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati is now legally, equitably and contractually subrogated to the rights of its insureds against Defendants, SPX, Grainger, SEC and SEA, individually, jointly and/or severally to the extent of those payments.

**COUNT ONE - NEGLIGENCE**
**(Plaintiff v. SPX)**

44. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

45. Defendants, SPX, owed Plaintiff's Insureds a duty to exercise reasonable care in connection with the manufacture, design and/or engineering of the Speedaire Fan, including its component parts, selection of materials utilized in the Speedaire Fan, manufacture and/or

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

46. Defendants, SPX, also owed a duty to exercise reasonable care to ensure that the Speedaire Fan was reasonably fit for the purpose for which it was intended to be used.

47. Defendants, SPX, also owed a duty to provide reasonable and adequate instructions with respect to the conditions and methods of utilizing Speedaire Fan safely, since danger of fire was reasonably foreseeable when the Speedaire Fan was used in the manner in which it was intended to be used.

48. Defendants, SPX, by and through their employees and/or duly authorized agents, acting in the course and scope of their employment and/or agency, breached the foregoing duties by acting in a negligent and/or careless manner, including, but not limited to, the following acts and/or omissions:

a. Designing, manufacturing and/or engineering the Speedaire Fan, selecting materials utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

b. Failing to observe and exercise a reasonable degree of care and skill in the design, manufacture and/or engineering of the Speedaire Fan, including its component parts, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

c. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so that it was safe and fit for its intended use;

d. Failing to warn that the Speedaire Fan, including its component parts, was defective and its use could result in a fire;

e. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce so that the Speedaire Fan was safe and free from risk of fire;

f. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendants, SPX, knew, or in the exercise of due care, should have known, were not properly trained to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce;

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

g. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

h. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, manufacture and/or engineering of the Speedaire Fan, including its component parts, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which may have caused the Speedaire Fan to fail in the course of its normal and/or intended use;

i. Failing to design and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in such a way as to not create a foreseeable risk of harm to persons and/or property;

j. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or other information concerning the

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

defect(s) and/or deficiency(ies) that caused the Speedaire Fan to fail in the course of its normal and intended use; and

k. Failing to properly design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so as to ensure its safety and fitness for the particular purpose for which it was intended.

49. The Fire and resulting damages were the direct, proximate and foreseeable result of Defendants, SPX's negligence, carelessness and/or recklessness, as described above.

50. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

51. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

52. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, SPX Flow, Inc. and SPX Flow US, LLC, individually, jointly and/or severally in the amount of

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

$2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT TWO - STRICT LIABILITY**
**(Plaintiff v. SPX)**

53. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

54. Defendants, SPX, were engaged in the business of designing, manufacturing and/or engineering the Speedaire Fan, selecting materials to be utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

55. Defendants, SPXs' Speedaire Fan was expected to, and did, reach Plaintiff's Insureds' Property without substantial change in the condition it was in when it was sold by Defendants.

56. Defendants, SPX, supplied the Speedaire Fan in a defective condition that rendered it unreasonably dangerous to the end user, specifically, Plaintiff's Insureds.

57. The Speedaire Fan was defective in that it failed and caused the Fire.

58. Plaintiff's Insureds utilized the Speedaire Fan for the purpose(s) and in the manner for which it was intended and/or reasonably anticipated by Defendants, SPX.

59. Plaintiff's Insureds could not, by the exercise of ordinary care, have anticipated or discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Speedaire Fan.

60. The Fire and resulting damages were the result of:

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

a. The manufacture and/or design defect in the Speedaire Fan, as evidenced by the fact that it failed and caused the Fire, which existed when the Speedaire Fan was sold and/or distributed to Plaintiff's Insureds;

b. Defendants, SPX, failure to incorporate a safety device into the Speedaire Fan so as to render the Speedaire Fan safe for use; and

c. Defendants, SPX's, failure to provide adequate warning of the serious and foreseeable risk of harm posed by the defective condition of the Speedaire Fan.

61. The Fire and resulting damages were the direct, proximate and foreseeable result of the defective condition of the Speedaire Fan, which rendered it unreasonably dangerous, as described above.

62. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

63. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of Its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

64. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, SPX Flow, Inc. and SPX Flow US, LLC, individually, jointly and/or severally in the amount of

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

$2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT THREE - BREACH OF WARRANTIES**
**(Plaintiff v. SPX)**

65. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

66. Defendants, SPX, expressly and/or impliedly agreed to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

67. The Speedaire Fan was expected to, and did, reach Plaintiff's Insureds in essentially the same condition as when it left Defendants SPX's hands.

68. Defendants, SPX, had reason to know of the particular purpose for which its Speedaire Fan was required and/or intended to be utilized.

69. Defendants, SPX, could reasonably expect that property owners generally, and Plaintiff's Insureds specifically, might utilize the Speedaire Fan for its commercial packaging business.

70. Defendants, SPX, knew or had reason to know that consumers generally, and Plaintiff's Insureds specifically, would rely on Defendants SPX's skill and/or judgment to furnish a suitable Speedaire Fan.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

71. Plaintiff's Insureds relied on Defendants SPX's express and/or implied representations that the Speedaire Fan was safe and fit for its normal and intended use.

72. Plaintiff's Insureds utilized the Speedaire Fan in an ordinary and foreseeable manner and yet sustained damage when the Fire occurred due to defects in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials to be utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which caused damage to the Property.

73. Defendants, SPX, designed, manufactured and/or engineered, selected materials to be utilized in the making of the Speedaire Fan, manufactured and/or assembled, inspected and/or tested, packaged, marketed, sold and/or distributed and/or placed into the stream of commerce, the Speedaire Fan that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

74. The Speedaire Fan was not fit for the ordinary purpose for which it was intended, or the particular purpose for which it was required by Plaintiff's Insureds, because it failed and caused the Fire that caused damage to the Property.

75. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendants SPX's breach of warranties as averred above, the unmerchantable condition of the Speedaire Fan and the unfitness of the Speedaire Fan that was sold by Defendants, SPX.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

76. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in excess of $2,966,763.20.

77. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of its Insureds Protective Packaging and TEP, in excess of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

78. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, SPX Flow, Inc. and SPX Flow US, LLC, individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT FOUR - NEGLIGENCE**
**(Plaintiff v. Grainger)**

79. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

80. Defendant, Grainger, owed Plaintiff's Insureds a duty to exercise reasonable care in connection with the manufacture, design and/or engineering of the Speedaire Fan, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

81. Defendant, Grainger, also owed a duty to exercise reasonable care to ensure that the Speedaire Fan was reasonably fit for the purpose for which it was intended to be used.

82. Defendant, Grainger, also owed a duty to provide reasonable and adequate instructions with respect to the conditions and methods of utilizing Speedaire Fan safely, since danger of fire was reasonably foreseeable when the Speedaire Fan was used in the manner in which it was intended to be used.

83. Defendant, Grainger, by and through its employees and/or duly authorized agents, acting in the course and scope of their employment and/or agency, breached the foregoing duties by acting in a negligent and/or careless manner, including, but not limited to, the following acts and/or omissions:

a. Designing, manufacturing and/or engineering the Speedaire Fan, including its component parts, selecting materials utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

b. Failing to observe and exercise a reasonable degree of care and skill in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

c. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so that it was safe and fit for its intended use;

d. Failing to warn that the Speedaire Fan was defective and its use could result in a fire;

e. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce so that the Speedaire Fan was safe and free from risk of fire;

f. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendant, Grainger, knew, or in the exercise of due care, should have known, were not properly trained to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce;

g. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

h. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which may have caused the Speedaire Fan to fail in the course of its normal and/or intended use;

i. Failing to design and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in such a way as to not create a foreseeable risk of harm to persons and/or property;

j. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or other information concerning the defect(s) and/or deficiency(ies) that caused the Speedaire Fan to fail in the course of its normal and intended use; and

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

k. Failing to properly design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so as to ensure its safety and fitness for the particular purpose for which it was intended.

84. The Fire and resulting damages were the direct, proximate and foreseeable result of Defendant, Grainger's, negligence, carelessness and/or recklessness, as described above.

85. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

86. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

87. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, W.W. Grainger, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT FIVE - STRICT LIABILITY**
**(Plaintiff v. Grainger)**

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

88. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

89. Defendant, Grainger, was engaged in the business of designing, manufacturing and/or engineering the Speedaire Fan, including its component parts, selecting materials to be utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

90. Defendant, Grainger's Speedaire Fan was expected to, and did, reach Plaintiff's Insureds' Property without substantial change in the condition it was in when it was sold by Defendant.

91. Defendant, Grainger, supplied the Speedaire Fan, including its component parts, in a defective condition that rendered it unreasonably dangerous to the end user, specifically, Plaintiff's Insureds.

92. The Speedaire Fan was defective in that it failed and caused the Fire.

93. Plaintiff's Insureds utilized the Speedaire Fan for the purpose(s) and in the manner for which it was intended and/or reasonably anticipated by Defendant, Grainger.

94. Plaintiff's Insureds could not, by the exercise of ordinary care, have anticipated or discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Speedaire Fan.

95. The January 16, 2022 Fire and resulting damages were the result of:

a. The manufacture and/or design defect in the Speedaire Fan, including its component parts, as evidenced by the fact that it failed and caused the Fire, existed when the Speedaire Fan was sold and/or distributed to Plaintiff's Insureds;

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

b. Defendant, Grainger, failure to incorporate a safety device into the Speedaire Fan so as to render the Speedaire Fan safe for use; and

c. Defendant, Grainger's, failure to provide adequate warning of the serious and foreseeable risk of harm posed by the defective condition of the Speedaire Fan.

96. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of the defective condition of the Speedaire Fan, which rendered it unreasonably dangerous, as described above.

97. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

98. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of Its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

99. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, W.W. Grainger, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT SIX - BREACH OF WARRANTIES**
**(Plaintiff v. Grainger)**

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

100. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

101. Defendant, Grainger, expressly and/or impliedly agreed to design, manufacture and/or engineer the Speedaie Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

102. The Speedaire Fan was expected to, and did, reach Plaintiff's Insureds in essentially the same condition as when it left Defendant Grainger's hands.

103. Defendant, Grainger, had reason to know of the particular purpose for which its Speedaire Fan was required and/or intended to be utilized.

104. Defendant, Grainger, could reasonably expect that property owners generally, and Plaintiff's Insureds specifically, might utilize the Speedaire Fan for its commercial packaging business.

105. Defendant, Grainger, knew or had reason to know that consumers generally, and Plaintiff's Insureds specifically, would rely on Defendant Grainger's skill and/or judgment to furnish a suitable Speedaire Fan.

106. Plaintiff's Insureds relied on Defendant Grainger's express and/or implied representations that the Speedaire Fan was safe and fit for its normal and intended use.

107. Plaintiff's Insureds utilized the Speedaire Fan in an ordinary and foreseeable manner and yet sustained damage when the fire occurred due to defects in the design,

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

manufacture and/or engineering of the Speedaire Fan, selection of materials to be utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which caused damage to the Property.

108. Defendant, Grainger, designed, manufactured and/or engineered, selected materials to be utilized in the making of, manufactured and/or assembled, inspected and/or tested, packaged, marketed, sold and/or distributed and/or placed into the stream of commerce, the Speedaire Fan that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

109. The Speedaire Fan was not fit for the ordinary purpose for which it was intended, or the particular purpose for which it was required by Plaintiff's Insureds, because it failed and caused the Fire that caused damage to the Property.

110. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendant Grainger's breach of warranties as averred above, the unmerchantable condition of the Speedaire Fan and the unfitness of the Speedaire Fan that was sold by Defendant, Grainger.

111. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in excess of $2,966,763.20.

112. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of its Insureds Protective Packaging and TEP, in excess of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

113. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, W.W. Grainger, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT SEVEN - NEGLIGENCE**
**(Plaintiff v. SEC and SEA)**

114. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

115. Defendants, SEC and SEA, owed Plaintiff's Insureds a duty to exercise reasonable care in connection with the manufacture, design and/or engineering of the Compressor, selection of materials utilized in the Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placing the Compressor into the stream of commerce.

116. Defendants, SEC and SEA, also owed a duty to exercise reasonable care to ensure that the Compressor was reasonably fit for the purpose for which it was intended to be used.

117. Defendants, SEC and SEA, also owed a duty to provide reasonable and adequate instructions with respect to the conditions and methods of utilizing Compressor safely, since danger of fire was reasonably foreseeable when the Compressor was used in the manner in which it was intended to be used.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

118. Defendants, SEC and SEA, by and through its employees and/or duly authorized agents, acting in the course and scope of their employment and/or agency, breached the foregoing duties by acting in a negligent and/or careless manner, including, but not limited to, the following acts and/or omissions:

a. Designing, manufacturing and/or engineering the Compressor, selecting materials utilized in Compressor, manufacturing and/or assembling the Compressor, inspecting and/or testing the Compressor, packaging the Compressor, marketing, selling and/or distributing the Compressor and/or placing the Compressor into the stream of commerce;

b. Failing to observe and exercise a reasonable degree of care and skill in the design, manufacture and/or engineering of the Compressor, selection of materials utilized in the Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placing the Compressor into the stream of commerce;

c. Failing to design, manufacture and/or engineer the Compressor, select materials utilized in Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce so that it was safe and fit for its intended use;

d. Failing to warn that the Compressor was defective and its use could result in a fire;

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

e. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, manufacture and/or engineering of the Compressor, selection of materials utilized in Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placing the Compressor into the stream of commerce so that the Compressor was safe and free from risk of fire;

f. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendants, SEC and SEA, knew, or in the exercise of due care, should have known, were not properly trained to design, manufacture and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce;

g. Failing to design, manufacture and/or engineer the Compressor, select materials to be utilized in Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

h. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, manufacture and/or engineering of the Compressor,

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

selection of materials utilized in the Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placement of the Compressor into the stream of commerce, which may have caused the Compressor to fail in the course of its normal and/or intended use;

i. Failing to design and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce in such a way as to not create a foreseeable risk of harm to persons and/or property;

j. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or other information concerning the defect(s) and/or deficiency(ies) that caused the Compressor to fail in the course of its normal and intended use; and

k. Failing to properly design, manufacture and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce so as to ensure its safety and fitness for the particular purpose for which it was intended.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

119. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendants, SEC and SEA's, negligence, carelessness and/or recklessness, as described above.

120. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

121. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

122. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, Samsung Electronics Co., Ltd. And Samsung Electronics America, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT EIGHT - STRICT LIABILITY**
**(Plaintiff v. SEC and SEA)**

123. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

124. Defendants, SEC and SEA, was engaged in the business of designing, manufacturing and/or engineering the Compressor, selecting materials to be utilized in the Compressor, manufacturing and/or assembling the Compressor, inspecting and/or testing the

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Compressor, packaging the Compressor, marketing, selling and/or distributing the Compressor and/or placing the Compressor into the stream of commerce.

125. Defendant, Samsung's Compressor was expected to, and did, reach Plaintiff's Insureds Property without substantial change in the condition it was in when it was sold by Defendants.

126. Defendants, SEC and SEA, supplied the Compressor in a defective condition that rendered it unreasonably dangerous to the end user, specifically, Plaintiff's Insureds.

127. The Compressor was defective in that it failed and caused the Fire.

128. Plaintiff's Insureds utilized the Compressor for the purpose(s) and in the manner for which it was intended and/or reasonably anticipated by Defendants, SEC and SEA.

129. Plaintiff's Insureds could not, by the exercise of ordinary care, have anticipated or discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Compressor.

130. The January 16, 2022 Fire and resulting damages were the result of:

a. The manufacture and/or design defect in the Compressor, as evidenced by the fact that it failed and caused the Fire, existed when the Compressor was sold and/or distributed to Plaintiff's Insureds;

b. Defendants, SEC and SEA, failure to incorporate a safety device into the Compressor so as to render the Compressor safe for use; and

c. Defendants, SEC and SEA's, failure to provide adequate warning of the serious and foreseeable risk of harm posed by the defective condition of the Compressor.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

131. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of the defective condition of the Compressor, which rendered it unreasonably dangerous, as described above.

132. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

133. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of Its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insured for losses sustained as a result of the Fire.

134. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, Samsung Electronics Co., Ltd. And Samsung Electronics America, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT NINE - BREACH OF WARRANTIES**
**(Plaintiff v. SEC and SEA)**

135. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

136. Defendants, SEC and SEA, expressly and/or impliedly agreed to design, manufacture and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

137. The Compressor was expected to, and did, reach Plaintiff's Insureds in essentially the same condition as when it left Defendants SEC and SEA's hands.

138. Defendant, SEC and SEA, had reason to know of the particular purpose for which its Compressor was required and/or intended to be utilized.

139. Defendants, SEC and SEA, could reasonably expect that property owners generally, and Plaintiff's Insureds specifically, might utilize the Compressor for its commercial packaging business.

140. Defendants, SEC and SEA, knew or had reason to know that consumers generally, and Plaintiff's Insureds specifically, would rely on Defendants SEC and SEA's skill and/or judgment to furnish a suitable Compressor.

141. Plaintiff's Insureds relied on Defendants SEC and SEA's express and/or implied representations that the Compressor was safe and fit for its normal and intended use.

142. Plaintiff's Insureds utilized the Compressor in an ordinary and foreseeable manner and yet sustained damage when the fire occurred due to defects in the design, manufacture and/or engineering of the Compressor, selection of materials to be utilized in Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placement of the Compressor into the stream of commerce, which caused damage to the Property.

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

143. Defendants, SEC and SEA, designed, manufactured and/or engineered, selected materials to be utilized in the making of, manufactured and/or assembled, inspected and/or tested, packaged, marketed, sold and/or distributed and/or placed into the stream of commerce, the Compressor that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

144. The Compressor was not fit for the ordinary purpose for which it was intended, or the particular purpose for which it was required by Plaintiff's Insureds, because it failed and caused the Fire that caused damage to the Property.

145. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendants SEC and SEA's breach of warranties as averred above, the unmerchantable condition of the Compressor and the unfitness of the Compressor that was sold by Defendants, SEC and SEA.

146. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in excess of $2,966,763.20.

147. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds Protective Packaging and TEP, in excess of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

148. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, Samsung

ELECTRONICALLY FILED - 2025 Jan 14 11:45 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Electronics Co., Ltd. And Samsung Electronics America, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

Respectfully submitted,

HAMMACK LAW FIRM, P.A.

S/Paul E. Hammack
Paul E. Hammack, Esquire
SC Bar Number 68501
paul@hammacklawfirm.com
HAMMACK LAW FIRM, LLC
223 West Stone Avenue
Greenville, SC 29609-5434
864-326-3333
Fax: 864-991-3911

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

S/Michael F. Wallace
Michael F. Wallace, Esquire
wallacem@stutmanlaw.com
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
20 East Taunton Road, Suite 403
Berlin, NJ 08009
856-767-6800
Fax: 856-767-6810
*To Be Admitted Pro Hac Vice*

**Attorneys for Plaintiff**

January 14, 2025
Greenville, South Carolina

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

**STATE OF SOUTH CAROLINA**
**COUNTY OF KERSHAW**

**IN THE COURT OF COMMON PLEAS**
C.A. No.: 2024-CP-28-___

THE CINCINNATI INSURANCE COMPANY
as subrogee of Protective Packaging, Inc. and
TEP Real Estate, LLC
6200 South Gilmore Road
Fairfield, Ohio 45014

Plaintiff,

v.

SPX FLOW, INC.
3320 Ballantyne Corporate Place
Charlotte, North Carolina 28277-3607

SPX FLOW US, LLC
3320 Ballantyne Corporate Place
Charlotte, North Carolina 28277-3607

W.W. GRAINGER, INC.
100 Grainger Parkway
Lake Forest, Illinois 60045

and

SAMSUNG ELECTRONICS AMERICA, INC.
85 Challenger Road
Ridgefield Park, New Jersey 07660

Defendants.

**SUMMONS**
(Jury Trial Demanded)

TO THE DEFENDANTS NAMED ABOVE:

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in the above-captioned action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint on the Plaintiff at Hammack Law Firm, P.A., 223 West Stone Avenue, Greenville, SC 29609 thirty (30) days after the service hereof, exclusive of the date of service; in the event you fail to answer said Complaint within this time, the Plaintiff will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you for the relief demanded in the Complaint.

*[signature on next page]*

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

HAMMACK LAW FIRM, P.A.

s/Paul E. Hammack__________
Paul E. Hammack, Esquire
SC Bar Number 68501
paul@hammacklawfirm.com
HAMMACK LAW FIRM, LLC
223 West Stone Avenue
Greenville, SC 29609-5434
864-326-3333
Fax: 864-991-3911

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

s/Michael F. Wallace__________
Michael F. Wallace, Esquire
wallacem@stutmanlaw.com
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
20 East Taunton Road, Suite 403
Berlin, NJ 08009
856-767-6800
Fax: 856-767-6810
*To Be Admitted Pro Hac Vice*

**Attorneys for Plaintiff**

December 12, 2024
Greenville, South Carolina

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

**STATE OF SOUTH CAROLINA**
**COUNTY OF KERSHAW**

**IN THE COURT OF COMMON PLEAS**
C.A. No.: 2024-CP-28-____

THE CINCINNATI INSURANCE COMPANY
as subrogee of Protective Packaging, Inc. and
TEP Real Estate, LLC
6200 South Gilmore Road
Fairfield, Ohio 45014

Plaintiff,

v.

SPX FLOW, INC.
3320 Ballantyne Corporate Place
Charlotte, North Carolina 28277-3607

SPX FLOW US, LLC
3320 Ballantyne Corporate Place
Charlotte, North Carolina 28277-3607

W.W. GRAINGER, INC.
100 Grainger Parkway
Lake Forest, Illinois 60045

and

SAMSUNG ELECTRONICS AMERICA, INC.
85 Challenger Road
Ridgefield Park, New Jersey 07660

Defendants.

**SUMMONS**
(Jury Trial Demanded)

Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, by and through its undersigned attorneys, hereby avers the following by way of Complaint against Defendants, SPX Flow, Inc.; SPX Flow US, LLC; W.W. Grainger, Inc. and Samsung Electronics America, Inc.:

**<u>THE PARTIES</u>**

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

1. Plaintiff, The Cincinnati Insurance Company (hereinafter "Cincinnati"), is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 2600 South Gillmore Road, Fairfield, Ohio 45014.

2. At all times material hereto, Plaintiff, Cincinnati, was authorized to issue policies of insurance in the State of South Carolina, and provided insurance coverage to Protective Packaging, Inc. and TEP Real Estate, LLC under policy number: ENP0627120 (hereinafter the "Policy").

3. Plaintiff's Insured, Protective Packaging, Inc. (hereinafter "Protective Packaging"), is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located at 23 Industrial Park, Lugoff, Kershaw County, South Carolina 29078.

4. Plaintiff's Insured, TEP Real Estate, LLC (hereinafter "TEP"), is a limited liability company organized and existing under the laws of the State of South Carolina with a principal place of business located at 255 Standard Warehouse Road, Lugoff, Kershaw County, South Carolina 29078.

5. Defendant, SPX Flow, Inc., is, upon information and belief, a corporation organized and existing under the laws of the Commonwealth of Delaware with its principal place of business located at 13320 Ballantyne Corporate Place, Charlotte, North Carolina 82877-3607.

6. Defendant, SPX Flow, Inc., may be served through its Registered Agent in the State of South Carolina, the Corporate Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29069.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

7. At all material times, SPX Flow, Inc. was in the business of designing, manufacturing and distributing a dryer fan under the brand name Speedaire (hereinafter “Fan” and/or “Speedaire Fan”).

8. Defendant, SPX Flow US, LLC, is, upon information and belief, a corporation organized and existing under the laws of the Commonwealth of Delaware, with its principal place of business located at 13320 Ballantyne Corporate Place, Charlotte, North Carolina 82877-3607.

9. Defendant, SPX Flow US, LLC, may be served through its Registered Agent in the State of South Carolina, the Corporate Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29069.

10. At all material times, SPX Flow US, LLC, was in the business of designing, manufacturing and distributing a dryer fan under the brand name Speedaire (hereinafter “Fan” and/or “Speedaire Fan”).

11. Defendants, SPX Flow, Inc. and SPX Flow US, LLC, are collectively referred to herein as “SPX.”

12. Defendant, W.W. Grainger, Inc. (hereinafter “Grainger”), is, upon information and belief, a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 100 Grainger Parkway, Lake Forest, Illinois 60045.

13. Defendant, Grainger, may be served through its Registered Agent in the State of South Carolina, the Corporate Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29069.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

14. At all material times, Grainger was in the business of designing, manufacturing and distributing a dryer fan under the brand name Speedaire (hereinafter “Fan” and/or “Speedaire Fan”).

15. Defendant, Samsung Electronics America, Inc. (hereinafter “Samsung”), is, upon information and belief, a corporation organized and existing under the laws of the State of New York with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

16. Defendant, Samsung, may be served through its Registered Agent in the State of South Carolina, the CT Corporation System, located at 52 Office Park Court, Suite 103, Columbia South Carolina 29223.

17. At all times material hereto, Defendant, Samsung was in the business of designing, manufacturing and distributing electronics including, but not limited, a compressor (hereinafter “Compressor”) which was a component of the Speedaire Fan.

**JURISDICTION AND VENUE**

18. Jurisdiction is proper in the Circuit Courts of the State of South Carolina in that the cause of action accrued in South Carolina, where the loss giving rise to the litigation occurred at 255 Standard Warehouse Road, Lugoff, Kershaw County, South Carolina 29078.

19. Jurisdiction in this Court is proper as the cause of action arose from each of the Defendants, SPX Flow, Inc., SPX Flow US, LLC, Grainger and Samsung’s production, manufacture, and/or distribution of goods with the reasonable expectation that those goods were to be used and/or consumed within the State of South Carolina, the goods were so used and/or consumed within the State of South Carolina, and the use and/or consumption of those goods caused injury within the State of South Carolina

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

20. Venue is proper in Kershaw County in that this is the county where the cause of action accrued and where the loss giving rise to the litigation occurred at 255 Standard Warehouse Road, Lugoff, Kershaw County, South Carolina 29078.

**BACKGROUND**

21. At all times material hereto, Plaintiff's Insureds, Protective Packaging and TEP Real Estate, LLC ("Plaintiff's Insureds"), owned commercial property located at 255 Standard Warehouse Road, Lugoff, South Carolina 29078 (hereinafter the "Property").

22. At all times material hereto, Plaintiff was duly authorized to issue policies of insurance in the State of South Carolina.

23. At all times material hereto, Plaintiff provided insurance coverage to its Insureds for the Property and contents therein pursuant to the Policy.

24. At all times material hereto, Defendants SPX were engaged in the business of, inter alia, designing, engineering, developing, manufacturing, assembling, testing, inspecting, packaging, labeling, promoting, marketing, distributing, supplying, selling, and/or placing into the stream of commerce Speedaire Fans and/or component parts for Speedaire Fans which were intended for use by consumers for the ordinary purposes associated with such items.

25. At all times material hereto, Defendants SPX knew and intended that their Speedaire Fans and/or component parts for Speedaire Fans would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

26. At all times material hereto, Defendant Grainger was engaged in the business of, inter alia, designing, engineering, developing, manufacturing, assembling, testing, inspecting, packaging, labeling, promoting, marketing, distributing, supplying, selling, and/or placing into

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

the stream of commerce Speedaire Fans and/or component parts for Speedaire Fans which were intended for use by consumers for the ordinary purposes associated with such items.

27. At all times material hereto, Defendant Grainger knew and intended that its Speedaire Fans and/or component parts for Speedaire Fans would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

28. At all times material hereto, Defendant Samsung was engaged in the business of, inter alia, designing, engineering, developing, manufacturing, assembling, testing, inspecting, packaging, labeling, promoting, marketing, distributing, supplying, selling, and/or placing into the stream of commerce compressors and/or component parts for compressors which were intended for use by consumers for the ordinary purposes associated with such items.

29. At all times material hereto, Defendant Samsung knew and intended that its compressors and/or component parts for compressors would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

30. Prior to January 16, 2022, a Speedaire Fan and Compressor including, but not limited to, its component parts were designed, engineered, developed, manufactured, assembled, tested, inspected, packaged, labeled, promoted, marketed, distributed, supplied, sold, and/or placed into the stream of commerce by Defendants, SPX, Grainger and Samsung.

31. At the time the Speedaire Fan and Compressor were placed into the stream of commerce by Defendants, SPX, Grainger and Samsung, it was unreasonably and/or inherently dangerous, defective, and/or hazardous.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

32. Prior to January 16, 2022, the Speedaire Fan, including the Compressor, was purchased and placed in the Property.

33. On or about January 16, 2022, a fire occurred at the Property (hereinafter "The Fire") due to the negligent and/or other liability producing conduct of Defendants, SPX, Grainger and Samsung, individually, jointly, and/or severally.

34. Specifically, the Fire was caused to occur because the Speedaire Fan and Compressor were defective and failed to function as they were intended, which in turn caused the Fire.

35. At the time of the Fire, The Speedaire Fan, and its component parts, including the Compressor, were in the same condition as the date they were placed into the stream of commerce, and were not otherwise altered, modified, and/or changed in any way prior to or during its use.

36. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses of $2,966,763.20.

37. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

38. As a result of Plaintiff's payments made to or on behalf of its Insureds, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati is now legally, equitably and contractually subrogated to the rights of its insureds against Defendants, SPX, Grainger and Samsung, individually, jointly and/or severally to the extent of those payments.

**COUNT ONE - NEGLIGENCE**
**(Plaintiff v. SPX)**

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

39. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

40. Defendants, SPX, owed Plaintiff's Insureds a duty to exercise reasonable care in connection with the manufacture, design and/or engineering of the Speedaire Fan, including its component parts, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

41. Defendants, SPX, also owed a duty to exercise reasonable care to ensure that the Speedaire Fan was reasonably fit for the purpose for which it was intended to be used.

42. Defendants, SPX, also owed a duty to provide reasonable and adequate instructions with respect to the conditions and methods of utilizing Speedaire Fan safely, since danger of fire was reasonably foreseeable when the Speedaire Fan was used in the manner in which it was intended to be used.

43. Defendants, SPX, by and through their employees and/or duly authorized agents, acting in the course and scope of their employment and/or agency, breached the foregoing duties by acting in a negligent and/or careless manner, including, but not limited to, the following acts and/or omissions:

a. Designing, manufacturing and/or engineering the Speedaire Fan, selecting materials utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

b. Failing to observe and exercise a reasonable degree of care and skill in the design, manufacture and/or engineering of the Speedaire Fan, including its component parts, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

c. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so that it was safe and fit for its intended use;

d. Failing to warn that the Speedaire Fan, including its component parts, was defective and its use could result in a fire;

e. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce so that the Speedaire Fan was safe and free from risk of fire;

f. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendants, SPX, knew, or in the exercise of due care, should have known, were not properly trained to design, manufacture and/or engineer the

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Speedaire Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce;

g. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

h. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, manufacture and/or engineering of the Speedaire Fan, including its component parts, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which may have caused the Speedaire Fan to fail in the course of its normal and/or intended use;

i. Failing to design and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

commerce in such a way as to not create a foreseeable risk of harm to persons and/or property;

j. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or other information concerning the defect(s) and/or deficiency(ies) that caused the Speedaire Fan to fail in the course of its normal and intended use; and

k. Failing to properly design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so as to ensure its safety and fitness for the particular purpose for which it was intended.

44. The Fire and resulting damages were the direct, proximate and foreseeable result of Defendants, SPX's negligence, carelessness and/or recklessness, as described above.

45. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

46. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

47. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, SPX Flow, Inc. and SPX Flow US, LLC, individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT TWO - STRICT LIABILITY**
**(Plaintiff v. SPX)**

48. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

49. Defendants, SPX, were engaged in the business of designing, manufacturing and/or engineering the Speedaire Fan, selecting materials to be utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

50. Defendants, SPXs' Speedaire Fan was expected to, and did, reach Plaintiff's Insureds' Property without substantial change in the condition it was in when it was sold by Defendants.

51. Defendants, SPX, supplied the Speedaire Fan in a defective condition that rendered it unreasonably dangerous to the end user, specifically, Plaintiff's Insureds.

52. The Speedaire Fan was defective in that it failed and caused the Fire.

53. Plaintiff's Insureds utilized the Speedaire Fan for the purpose(s) and in the manner for which it was intended and/or reasonably anticipated by Defendants, SPX.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

54. Plaintiff's Insureds could not, by the exercise of ordinary care, have anticipated or discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Speedaire Fan.

55. The Fire and resulting damages were the result of:

a. The manufacture and/or design defect in the Speedaire Fan, as evidenced by the fact that it failed and caused the Fire, which existed when the Speedaire Fan was sold and/or distributed to Plaintiff's Insureds;

b. Defendants, SPX, failure to incorporate a safety device into the Speedaire Fan so as to render the Speedaire Fan safe for use; and

c. Defendants, SPX's, failure to provide adequate warning of the serious and foreseeable risk of harm posed by the defective condition of the Speedaire Fan.

56. The Fire and resulting damages were the direct, proximate and foreseeable result of the defective condition of the Speedaire Fan, which rendered it unreasonably dangerous, as described above.

57. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

58. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of Its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

59. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendants, SPX Flow, Inc. and SPX Flow US, LLC, individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT THREE - BREACH OF WARRANTIES**
**(Plaintiff v. SPX)**

60. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

61. Defendants, SPX, expressly and/or impliedly agreed to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

62. The Speedaire Fan was expected to, and did, reach Plaintiff's Insureds in essentially the same condition as when it left Defendants SPX's hands.

63. Defendants, SPX, had reason to know of the particular purpose for which its Speedaire Fan was required and/or intended to be utilized.

64. Defendants, SPX, could reasonably expect that property owners generally, and Plaintiff's Insureds specifically, might utilize the Speedaire Fan for its commercial packaging business.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

65. Defendants, SPX, knew or had reason to know that consumers generally, and Plaintiff's Insureds specifically, would rely on Defendants SPX's skill and/or judgment to furnish a suitable Speedaire Fan.

66. Plaintiff's Insureds relied on Defendants SPX's express and/or implied representations that the Speedaire Fan was safe and fit for its normal and intended use.

67. Plaintiff's Insureds utilized the Speedaire Fan in an ordinary and foreseeable manner and yet sustained damage when the Fire occurred due to defects in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials to be utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which caused damage to the Property.

68. Defendants, SPX, designed, manufactured and/or engineered, selected materials to be utilized in the making of the Speedaire Fan, manufactured and/or assembled, inspected and/or tested, packaged, marketed, sold and/or distributed and/or placed into the stream of commerce, the Speedaire Fan that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

69. The Speedaire Fan was not fit for the ordinary purpose for which it was intended, or the particular purpose for which it was required by Plaintiff's Insureds, because it failed and caused the Fire that caused damage to the Property.

70. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendants SPX's breach of warranties as averred above, the

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

unmerchantable condition of the Speedaire Fan and the unfitness of the Speedaire Fan that was sold by Defendants, SPX.

71. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in excess of $2,966,763.20.

72. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of its Insureds Protective Packaging and TEP, in excess of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

73. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, SPX Flow, Inc. and SPX Flow US, LLC, individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT FOUR - NEGLIGENCE**
**(Plaintiff v. Grainger)**

74. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

75. Defendant, Grainger, owed Plaintiff's Insureds a duty to exercise reasonable care in connection with the manufacture, design and/or engineering of the Speedaire Fan, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan,

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

76. Defendant, Grainger, also owed a duty to exercise reasonable care to ensure that the Speedaire Fan was reasonably fit for the purpose for which it was intended to be used.

77. Defendant, Grainger, also owed a duty to provide reasonable and adequate instructions with respect to the conditions and methods of utilizing Speedaire Fan safely, since danger of fire was reasonably foreseeable when the Speedaire Fan was used in the manner in which it was intended to be used.

78. Defendant, Grainger, by and through its employees and/or duly authorized agents, acting in the course and scope of their employment and/or agency, breached the foregoing duties by acting in a negligent and/or careless manner, including, but not limited to, the following acts and/or omissions:

a. Designing, manufacturing and/or engineering the Speedaire Fan, including its component parts, selecting materials utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

b. Failing to observe and exercise a reasonable degree of care and skill in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce;

c. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so that it was safe and fit for its intended use;

d. Failing to warn that the Speedaire Fan was defective and its use could result in a fire;

e. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce so that the Speedaire Fan was safe and free from risk of fire;

f. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendant, Grainger, knew, or in the exercise of due care, should have known, were not properly trained to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce;

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

g. Failing to design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

h. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials utilized in the Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which may have caused the Speedaire Fan to fail in the course of its normal and/or intended use;

i. Failing to design and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in such a way as to not create a foreseeable risk of harm to persons and/or property;

j. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or other information concerning the

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

defect(s) and/or deficiency(ies) that caused the Speedaire Fan to fail in the course of its normal and intended use; and

k. Failing to properly design, manufacture and/or engineer the Speedaire Fan, select materials to be utilized in Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce so as to ensure its safety and fitness for the particular purpose for which it was intended.

79. The Fire and resulting damages were the direct, proximate and foreseeable result of Defendant, Grainger's, negligence, carelessness and/or recklessness, as described above.

80. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

81. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

82. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, W.W. Grainger, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT FIVE - STRICT LIABILITY**
**(Plaintiff v. Grainger)**

83. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

84. Defendant, Grainger, was engaged in the business of designing, manufacturing and/or engineering the Speedaire Fan, including its component parts, selecting materials to be utilized in the Speedaire Fan, manufacturing and/or assembling the Speedaire Fan, inspecting and/or testing the Speedaire Fan, packaging the Speedaire Fan, marketing, selling and/or distributing the Speedaire Fan and/or placing the Speedaire Fan into the stream of commerce.

85. Defendant, Grainger's Speedaire Fan was expected to, and did, reach Plaintiff's Insureds' Property without substantial change in the condition it was in when it was sold by Defendant.

86. Defendant, Grainger, supplied the Speedaire Fan, including its component parts, in a defective condition that rendered it unreasonably dangerous to the end user, specifically, Plaintiff's Insureds.

87. The Speedaire Fan was defective in that it failed and caused the Fire.

88. Plaintiff's Insureds utilized the Speedaire Fan for the purpose(s) and in the manner for which it was intended and/or reasonably anticipated by Defendant, Grainger.

89. Plaintiff's Insureds could not, by the exercise of ordinary care, have anticipated or discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Speedaire Fan.

90. The January 16, 2022 Fire and resulting damages were the result of:

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

a. The manufacture and/or design defect in the Speedaire Fan, including its component parts, as evidenced by the fact that it failed and caused the Fire, existed when the Speedaire Fan was sold and/or distributed to Plaintiff's Insureds;

b. Defendant, Grainger, failure to incorporate a safety device into the Speedaire Fan so as to render the Speedaire Fan safe for use; and

c. Defendant, Grainger's, failure to provide adequate warning of the serious and foreseeable risk of harm posed by the defective condition of the Speedaire Fan.

91. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of the defective condition of the Speedaire Fan, which rendered it unreasonably dangerous, as described above.

92. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

93. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of Its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

94. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, W.W. Grainger, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT SIX - BREACH OF WARRANTIES**
**(Plaintiff v. Grainger)**

95. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

96. Defendant, Grainger, expressly and/or impliedly agreed to design, manufacture and/or engineer the Speedaie Fan, select materials to be utilized in the Speedaire Fan, manufacture and/or assemble the Speedaire Fan, inspect and/or test the Speedaire Fan, package the Speedaire Fan, market, sell and/or distribute the Speedaire Fan and/or place the Speedaire Fan into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

97. The Speedaire Fan was expected to, and did, reach Plaintiff's Insureds in essentially the same condition as when it left Defendant Grainger's hands.

98. Defendant, Grainger, had reason to know of the particular purpose for which its Speedaire Fan was required and/or intended to be utilized.

99. Defendant, Grainger, could reasonably expect that property owners generally, and Plaintiff's Insureds specifically, might utilize the Speedaire Fan for its commercial packaging business.

100. Defendant, Grainger, knew or had reason to know that consumers generally, and Plaintiff's Insureds specifically, would rely on Defendant Grainger's skill and/or judgment to furnish a suitable Speedaire Fan.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

101. Plaintiff's Insureds relied on Defendant Grainger's express and/or implied representations that the Speedaire Fan was safe and fit for its normal and intended use.

102. Plaintiff's Insureds utilized the Speedaire Fan in an ordinary and foreseeable manner and yet sustained damage when the fire occurred due to defects in the design, manufacture and/or engineering of the Speedaire Fan, selection of materials to be utilized in Speedaire Fan, manufacture and/or assembly of the Speedaire Fan, inspection and/or testing of the Speedaire Fan, packaging of the Speedaire Fan, marketing, sale and/or distribution of the Speedaire Fan and/or placement of the Speedaire Fan into the stream of commerce, which caused damage to the Property.

103. Defendant, Grainger, designed, manufactured and/or engineered, selected materials to be utilized in the making of, manufactured and/or assembled, inspected and/or tested, packaged, marketed, sold and/or distributed and/or placed into the stream of commerce, the Speedaire Fan that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

104. The Speedaire Fan was not fit for the ordinary purpose for which it was intended, or the particular purpose for which it was required by Plaintiff's Insureds, because it failed and caused the Fire that caused damage to the Property.

105. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendant Grainger's breach of warranties as averred above, the unmerchantable condition of the Speedaire Fan and the unfitness of the Speedaire Fan that was sold by Defendant, Grainger.

106. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in excess of $2,966,763.20.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

107. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of its Insureds Protective Packaging and TEP, in excess of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

108. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, W.W. Grainger, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT SEVEN - NEGLIGENCE**
**(Plaintiff v. Samsung Electronics America, Inc.)**

109. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

110. Defendant, Samsung, owed Plaintiff's Insureds a duty to exercise reasonable care in connection with the manufacture, design and/or engineering of the Compressor, selection of materials utilized in the Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placing the Compressor into the stream of commerce.

111. Defendant, Samsung, also owed a duty to exercise reasonable care to ensure that the Compressor was reasonably fit for the purpose for which it was intended to be used.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

112. Defendant, Samsung, also owed a duty to provide reasonable and adequate instructions with respect to the conditions and methods of utilizing Compressor safely, since danger of fire was reasonably foreseeable when the Compressor was used in the manner in which it was intended to be used.

113. Defendant, Samsung, by and through its employees and/or duly authorized agents, acting in the course and scope of their employment and/or agency, breached the foregoing duties by acting in a negligent and/or careless manner, including, but not limited to, the following acts and/or omissions:

a. Designing, manufacturing and/or engineering the Compressor, selecting materials utilized in Compressor, manufacturing and/or assembling the Compressor, inspecting and/or testing the Compressor, packaging the Compressor, marketing, selling and/or distributing the Compressor and/or placing the Compressor into the stream of commerce;

b. Failing to observe and exercise a reasonable degree of care and skill in the design, manufacture and/or engineering of the Compressor, selection of materials utilized in the Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placing the Compressor into the stream of commerce;

c. Failing to design, manufacture and/or engineer the Compressor, select materials utilized in Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

distribute the Compressor and/or place the Compressor into the stream of commerce so that it was safe and fit for its intended use;

d. Failing to warn that the Compressor was defective and its use could result in a fire;

e. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, manufacture and/or engineering of the Compressor, selection of materials utilized in Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placing the Compressor into the stream of commerce so that the Compressor was safe and free from risk of fire;

f. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendant, Samsung, knew, or in the exercise of due care, should have known, were not properly trained to design, manufacture and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce;

g. Failing to design, manufacture and/or engineer the Compressor, select materials to be utilized in Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce in accordance with local, state and/or federal statutes

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

h. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, manufacture and/or engineering of the Compressor, selection of materials utilized in the Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placement of the Compressor into the stream of commerce, which may have caused the Compressor to fail in the course of its normal and/or intended use;

i. Failing to design and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce in such a way as to not create a foreseeable risk of harm to persons and/or property;

j. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or other information concerning the defect(s) and/or deficiency(ies) that caused the Compressor to fail in the course of its normal and intended use; and

k. Failing to properly design, manufacture and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

the stream of commerce so as to ensure its safety and fitness for the particular purpose for which it was intended.

114. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendant, Samsung's, negligence, carelessness and/or recklessness, as described above.

115. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

116. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

117. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, Samsung Electronics America, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT EIGHT - STRICT LIABILITY**
**(Plaintiff v. Samsung Electronics America, Inc.)**

118. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

119. Defendant, Samsung, was engaged in the business of designing, manufacturing and/or engineering the Compressor, selecting materials to be utilized in the Compressor, manufacturing and/or assembling the Compressor, inspecting and/or testing the Compressor, packaging the Compressor, marketing, selling and/or distributing the Compressor and/or placing the Compressor into the stream of commerce.

120. Defendant, Samsung's Compressor was expected to, and did, reach Plaintiff's Insureds Property without substantial change in the condition it was in when it was sold by Defendant.

121. Defendant, Samsung, supplied the Compressor in a defective condition that rendered it unreasonably dangerous to the end user, specifically, Plaintiff's Insureds.

122. The Compressor was defective in that it failed and caused the Fire.

123. Plaintiff's Insureds utilized the Compressor for the purpose(s) and in the manner for which it was intended and/or reasonably anticipated by Defendant, Samsung.

124. Plaintiff's Insureds could not, by the exercise of ordinary care, have anticipated or discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Compressor.

125. The January 16, 2022 Fire and resulting damages were the result of:

a. The manufacture and/or design defect in the Compressor, as evidenced by the fact that it failed and caused the Fire, existed when the Compressor was sold and/or distributed to Plaintiff's Insureds;

b. Defendant, Samsung, failure to incorporate a safety device into the Compressor so as to render the Compressor safe for use; and

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

c. Defendant, Samsung's, failure to provide adequate warning of the serious and foreseeable risk of harm posed by the defective condition of the Compressor.

126. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of the defective condition of the Compressor, which rendered it unreasonably dangerous, as described above.

127. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in the amount of $2,966,763.20.

128. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, has made payments to or on behalf of Its Insureds, Protective Packaging and TEP, in the amount of $2,966,763.20 to compensate Plaintiff's Insured for losses sustained as a result of the Fire.

129. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, Samsung Electronics America, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**COUNT NINE - BREACH OF WARRANTIES**
**(Plaintiff v. Samsung Electronics America, Inc.)**

130. Plaintiff reiterates and realleges the preceding paragraphs as if fully rewritten and restated herein at length.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

131. Defendant, Samsung, expressly and/or impliedly agreed to design, manufacture and/or engineer the Compressor, select materials to be utilized in the Compressor, manufacture and/or assemble the Compressor, inspect and/or test the Compressor, package the Compressor, market, sell and/or distribute the Compressor and/or place the Compressor into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

132. The Compressor was expected to, and did, reach Plaintiff's Insureds in essentially the same condition as when it left Defendant Samsung's hands.

133. Defendant, Samsung, had reason to know of the particular purpose for which its Compressor was required and/or intended to be utilized.

134. Defendant, Samsung, could reasonably expect that property owners generally, and Plaintiff's Insureds specifically, might utilize the Compressor for its commercial packaging business.

135. Defendant, Samsung, knew or had reason to know that consumers generally, and Plaintiff's Insureds specifically, would rely on Defendant Samsung's skill and/or judgment to furnish a suitable Compressor.

136. Plaintiff's Insureds relied on Defendant Samsung's express and/or implied representations that the Compressor was safe and fit for its normal and intended use.

137. Plaintiff's Insureds utilized the Compressor in an ordinary and foreseeable manner and yet sustained damage when the fire occurred due to defects in the design, manufacture and/or engineering of the Compressor, selection of materials to be utilized in Compressor, manufacture and/or assembly of the Compressor, inspection and/or testing of the

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

Compressor, packaging of the Compressor, marketing, sale and/or distribution of the Compressor and/or placement of the Compressor into the stream of commerce, which caused damage to the Property.

138. Defendant, Samsung, designed, manufactured and/or engineered, selected materials to be utilized in the making of, manufactured and/or assembled, inspected and/or tested, packaged, marketed, sold and/or distributed and/or placed into the stream of commerce, the Compressor that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

139. The Compressor was not fit for the ordinary purpose for which it was intended, or the particular purpose for which it was required by Plaintiff's Insureds, because it failed and caused the Fire that caused damage to the Property.

140. The January 16, 2022 Fire and resulting damages were the direct, proximate and foreseeable result of Defendant Samsung's breach of warranties as averred above, the unmerchantable condition of the Compressor and the unfitness of the Compressor that was sold by Defendant, Samsung.

141. As a result of the Fire, Plaintiff's Insureds suffered significant damage to the Property and their contents and sustained losses in excess of $2,966,763.20.

142. As a direct and proximate result of the Fire, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, made payments to or on behalf of its Insureds Protective Packaging and TEP, in excess of $2,966,763.20 to compensate Plaintiff's Insureds for losses sustained as a result of the Fire.

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

143. As a result of Plaintiff's payments, and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is now legally, equitably and contractually subrogated to the rights of its Insureds to the extent of those payments.

WHEREFORE, Plaintiff, The Cincinnati Insurance Company as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC, demands judgment against Defendant, Samsung Electronics America, Inc., individually, jointly and/or severally in the amount of $2,966,763.20, plus court costs, attorneys' fees and other such and further relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

Respectfully submitted,

HAMMACK LAW FIRM, P.A.

S/Paul E. Hammack___________
Paul E. Hammack, Esquire
SC Bar Number 68501
paul@hammacklawfirm.com
HAMMACK LAW FIRM, LLC
223 West Stone Avenue
Greenville, SC 29609-5434
864-326-3333
Fax: 864-991-3911

*[signature on next page]*

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

S/Michael F. Wallace___________
Michael F. Wallace, Esquire
wallacem@stutmanlaw.com
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
20 East Taunton Road, Suite 403
Berlin, NJ 08009
856-767-6800
Fax: 856-767-6810
*To Be Admitted Pro Hac Vice*

**Attorneys for Plaintiff**

December 12, 2024
Greenville, South Carolina

ELECTRONICALLY FILED - 2024 Dec 12 12:24 PM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

# PROOF OF SERVICE

ELECTRONICALLY FILED - 2025 Feb 05 11:30 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

| | |
|---|---|
| **State:** | SOUTH CAROLINA |
| **Court:** | IN THE COURT OF COMMON PLEAS |
| **County:** | KERSHAW |
| **Plaintiff/ Petitioner:** | THE CINCINNATI INSURANCE COMPANY as subrogee of Protective Packaging, Inc. and TEP Real Estate, LLC |
| **Defendant/ Respondent:** | SPX FLOW, INC., et al. |
| **Case Number:** | 2024-CP-28-28000959 |
| **Index/Docket Number:** | -- |

I, Joseph Richardson, being first duly sworn, deposes and says that: I am over the age of 21 years old and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

I served SPX FLOW, INC., c/o Corporation Service Company the Summons and Civil Action Amended Complaint as follows:

| | | | |
|---|---|---|---|
| **Serve/Non Serve Date:** | 1/27/2025 | **Person Served:** | Heather Hughes, intake specialist |
| **Location of Serve:** | Business | **Description:** | *(if served)* |
| **Manner of Service:** | Corporate | Age | 50-54 |
| **Street Address:** | 2626 Glenwood Ave., Ste 550 Raleigh, NC 27608 | Hair Color | Brown |
| | | Sex | Female |
| | | Race | White |
| | | Height | 5'5"-5'8" |
| | | Weight | 160-180 lbs |
| | | Marital Status | Single |
| | | Military Status | No |
| | | Military Branch | Refused |
| | | Active in Military? | No |
| | | Other notable details | |

| **Process Server** | ***Joseph Richardson*** | | |
|---|---|---|---|
| **Attempt Date** | **Attempt Time** | **Served?** | **Comments (home/vehicle description, talked to neighbors etc.)** |
| 1/27/2025 | 8:36 AM | Yes | Heather Hughes, intake specialist at Registered Agent's Office and authorized to accept. |

Signature of Process Server [signature] Date 1/28/25

Sworn and subscribed before me this 28TH day of JANUARY, in the year of 2025, by Joseph Richardson
( ) Personally known or
( ) Produced NCDL identification number 9770976

State of NC County of WAKE Signature of Notary Public [signature] 08/18/29

TATIANA INGERSOLL NOTARY PUBLIC WAKE COUNTY, NC

# PROOF OF SERVICE

ELECTRONICALLY FILED - 2025 Feb 05 11:28 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

| | |
|---|---|
| **State:** | SOUTH CAROLINA |
| **Court:** | IN THE COURT OF COMMON PLEAS |
| **County:** | KERSHAW |
| **Plaintiff/ Petitioner:** | THE CINCINNATI INSURANCE COMPANY as subrogee of Protective Packaging Inc. and TEP Real Estate, LLC |
| **Defendant/ Respondent:** | SPX FLOW, INC., et al. |
| **Case Number:** | 2024-CP-28-28000959 |
| **Index/Docket Number:** | -- |

I, Joseph Richardson, being first duly sworn, deposes and says that: I am over the age of 21 years old and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

I served SPX FLOW US, LLC, c/o Corporation Service Company the Summons and Civil Action Amended Complaint as follows:

| | | | |
|---|---|---|---|
| **Serve/Non Serve Date:** | 1/27/2025 | **Person Served:** | Heather Hughes, intake specialist |
| **Location of Serve:** | Business | **Description:** | *(if served)* |
| **Manner of Service:** | Corporate | Age | 50-54 |
| **Street Address:** | 2626 Glenwood Ave., Ste 550<br>Raleigh, NC 27608 | Hair Color | Brown |
| | | Sex | Female |
| | | Race | White |
| | | Height | 5'5"-5'8" |
| | | Weight | 160-180 lbs |
| | | Marital Status | Single |
| | | Military Status | No |
| | | Military Branch | Refused |
| | | Active in Military? | No |
| | | Other notable details | |

| **Process Server** | ***Joseph Richardson*** | | |
|---|---|---|---|
| **Attempt Date** | **Attempt Time** | **Served?** | **Comments (home/vehicle description, talked to neighbors etc.)** |
| 1/27/2025 | 8:37 AM | Yes | Heather Hughes, intake specialist at Registered Agent's Office and authorized to accept. |

Signature of Process Server [signature] Date 1/28/25

Sworn and subscribed before me this 28TH day of JANUARY, in the year of 2025, by Joseph Richardson

( ) Personally known or

( ) Produced NCDL identification number 9770976

State of NC County of WAKE Signature of Notary Public [signature] 08/18/29

TATIANA INGERSOLL NOTARY PUBLIC WAKE COUNTY, NC

# AFFIDAVIT OF SERVICE

**STATE OF SOUTH CAROLINA**
**COUNTY OF KERSHAW**

**Case #: 2024-CP-28-28000959**

**The Cincinnati Insurance Company, as subrogee of Protective Packaging, Inc., et al**
Plaintiff

**vs.**

**SPX Flow, Inc., et al**
Defendant

State of Illinois, County of Kane SS:

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all the times herein mentioned was a citizen of the United States, over the age of 18, not a party to nor interested in the above entitled action, is competent to be witness therein, and that I served copies of the:

**Summons & Amended Complaint**

PARTY SERVED: **W.W. GRAINGER, INC.**

PERSON SERVED: **IRMA MARKOFF, MANAGER EMPLOYMENT AND LABOR LAW**

METHOD OF SERVICE: **Corporate** - By delivering a true copy with the person identified above, who is authorized to accept or apparently in charge thereof. I informed said person of the contents therein.

DATE & TIME OF DELIVERY: **1/23/2025 at 11:25 AM**

ADDRESS, CITY AND STATE: **100 GRAINGER PARKWAY, LAKE FOREST, IL 60045**

Race: **White** Sex: **Female** Age: **40**
Height: **5'4"** Weight: **135** Hair: **Brown** Glasses: **No**

SUBSCRIBED AND SWORN to before me on the 23rd day of January, 2025.

Joan C. Harenberg
NOTARY PUBLIC

OFFICIAL SEAL
JOAN C HARENBERG
NOTARY PUBLIC, STATE OF ILLINOIS
Commission No. 715300
My Commission Expires 04/28/2025

I declare under penalties of perjury that the information contained herein is true and correct.

Richard Gerber
Richard Gerber
Registration No: 117-001119

ELECTRONICALLY FILED - 2025 Feb 05 11:31 AM - KERSHAW - COMMON PLEAS - CASE#2024CP2800959

# Kershaw County
# Fifth Judicial Circuit
# Public Index





## The Cincinnati Insurance Company VS Spx Flow Inc , defendant, et al

| | | | | | |
|---|---|---|---|---|---|
| **Case Number:** | 2024CP2800959 | **Court Agency:** | Common Pleas | **Filed Date:** | 12/12/2024 |
| **Case Type:** | Common Pleas | **Case Sub Type:** | Person Inj/Other 399 | **File Type:** | Mediator - Jury |
| **Status:** | Pending/ADR | **Assigned Judge:** | Clerk Of Court C P, G S, And Family Court | | |
| **Disposition:** | | **Disposition Date:** | | **Disposition Judge:** | |
| **Original Source Doc:** | | **Original Case #:** | | | |
| **Judgment Number:** | | **Court Roster:** | | | |

Case Parties Judgments Tax Map Information Associated Cases Actions Financials

| Name | Description | Type | Motion Roster | Begin Date | Completion Date | Documents |
|---|---|---|---|---|---|---|
| The Cincinnati Insurance Company | ADR/Alternative Dispute Resolution (Workflow) | Action | | 07/10/2025-12:24 | | |
| The Cincinnati Insurance Company | NEF(02-05-2025 11:31:58 AM) Service/Affidavit Of Service | Filing | | 02/05/2025-12:09 | | |
| The Cincinnati Insurance Company | NEF(02-05-2025 11:30:34 AM) Service/Affidavit Of Service | Filing | | 02/05/2025-12:07 | | |
| The Cincinnati Insurance Company | NEF(02-05-2025 11:28:40 AM) Service/Affidavit Of Service | Filing | | 02/05/2025-12:06 | | |
| The Cincinnati Insurance Company | Service/Affidavit Of Service on W W Grainger Inc | Filing | | 02/05/2025-11:31 | | |
| The Cincinnati Insurance Company | Service/Affidavit Of Service on Spx Flow Inc | Filing | | 02/05/2025-11:30 | | |
| The Cincinnati Insurance Company | Service/Affidavit Of Service on Spx Flow Us Llc | Filing | | 02/05/2025-11:28 | | |
| The Cincinnati Insurance Company | NEF(01-14-2025 11:45:18 AM) Amended/Amended Summons And ... | Filing | | 01/14/2025-11:50 | | |
| The Cincinnati Insurance Company | Amended/Amended Summons And Complaint | Filing | | 01/14/2025-11:45 | | |
| The Cincinnati Insurance Company | NEF(01-14-2025 10:49:59 AM) Amended/Amended Summons And ... | Filing | | 01/14/2025-11:07 | | |
| The Cincinnati Insurance Company | Duplicate AMENDED S&C | Filing | | 01/14/2025-10:49 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **The Cincinnati Insurance Company** | **Summons & Complaint** | **Filing** | | **12/12/2024-12:24** | | |

**CMSWeb 7.2 © 2024 South Carolina Judicial Branch • All rights reserved**